## BALLARD v YPSILANTI TOWNSHIP

Docket No. 173829. Submitted February 7, 1996, at Detroit. Decided May 10, 1996, at 9:25 A.M. Leave to appeal sought.

Sheniece Ballard, as personal representative of the estate of Kassim Ballard, and Dorothy J. Wilkes and Edna Reid, as personal representatives of the estate of Anthony D. Wilkes, brought an action against Ypsilanti Township and others, alleging liability by the township under the recreational land use act, MCL 300.201; MSA 13.1485, for wilful and wanton misconduct with respect to the decedents' drownings at a park operated by the township. The court, Donald E. Shelton, J., denied the township's motion for summary disposition, which was based on governmental immunity, MCL 691.1407(1); MSA 3.996(107)(1), and subsequently entered a judgment on jury verdicts in favor of the plaintiffs. The township appealed.

The Court of Appeals *held*:

The governmental immunity act, which provides that, except as provided in the act, all governmental agencies are immune from tort liability in all cases wherein a governmental agency is engaged in the exercise or discharge of a governmental function, does not provide an exception for claims brought under the recreational land use act. In this case, the township indisputably was engaged in the exercise or discharge of a governmental function with respect to its operation of the park and was therefore entitled to raise governmental immunity as a defense to the claims brought pursuant to the recreational land use act.

Reversed.

GOVERNMENTAL IMMUNITY — RECREATIONAL LAND USE.

A governmental agency that is engaged in the exercise or discharge of a governmental function with respect to its operation of lands used for recreation by those who pay no consideration is immune from tort liability for injuries sustained by such users, regardless of whether the governmental agency is culpable for gross negligence or wilful and wanton misconduct that, under the recreational land use act, would subject a private owner of recreational land to liability (MCL 300.201, 691.1407[1]; MSA 13.1485, 3.996[107][1]).

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Patrick Burkett*) and *Thomas L. Mulcahy*, for Sheniece Ballard.

*Joseph D. Welton*, for Dorothy J. Wilkes.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* by *Rosalind Rochkind* and *Thomas F. Myers*), for Ypsilanti Township.

Before: WAHLS, P.J., and HOOD and M. E. CLEMENTS,* JJ.

PER CURIAM. Defendant Ypsilanti Township appeals as of right from the jury verdicts in favor of plaintiffs in this case involving governmental immunity. We reverse.

On July 4, 1991, plaintiffs' decedents, Kassim Ballard, age eleven, and Anthony Wilkes, age twelve, were taken with a group of boys to Ford Lake Park in Ypsilanti by two adults, Haratio Blacksher and Veronica Mitchell. Although Mitchell told the boys not to go swimming, Blacksher allowed them to go into the water. The boys were nonswimmers. Ballard was in the water about ten to twelve feet out when he lost his footing. Wilkes went to help him and they both struggled. Blacksher went into the lake. All three went under. Blacksher emerged, but the boys drowned.

Off the shore of the lake where the boys drowned, the water was twenty to twenty-four inches deep for a length of about twelve feet. At that point, the water turned mucky and the depth dropped to 3½ feet. At thirteen feet from the shore, the water was six feet

---

* Circuit judge, sitting on the Court of Appeals by assignment.

deep. Defendant township runs Ford Lake Park. A 1983 study of the lake noted the existence of hazardous drop-offs.

Plaintiffs sued the township and two individuals who were in charge of park maintenance and park operations under various theories of liability. The theories presented to the jury were liability for wilful and wanton misconduct on the part of defendant township, pursuant to the recreational land use act (RUA), MCL 300.201; MSA 13.1485, and for gross negligence on the part of the individual defendants. The jury did not find either individual defendant to be guilty of gross negligence. However, the township was found to have committed wilful and wanton misconduct that was a proximate cause of the drownings. Ballard's estate was awarded $1 million and Wilkes' estate was awarded $400,000, awards that were reduced by twenty-five percent for comparative negligence.

Defendant township argues that the trial court should have granted its motion for summary disposition on the basis of governmental immunity. We agree.

We review de novo the trial court's denial of summary disposition because we must review the record to determine if defendant was entitled to judgment as a matter of law. *Citizens Ins Co v Bloomfield Twp,* 209 Mich App 484, 486; 532 NW2d 183 (1995). When reviewing a determination whether a claim is barred by governmental immunity, all documentary evidence submitted by the parties is to be considered. *Id.* All well-pleaded allegations are accepted as true and construed in favor of the nonmoving party. *Id.* MCR 2.116(C)(10) permits summary disposition when there

is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

Plaintiffs' claim against defendant township was brought pursuant to the RUA. In 1991, the RUA, which was first enacted in 1953, provided in part:

> [N]o cause of action shall arise for injuries to any person who is on the lands of another without paying to the owner, tenant, or lessee of the lands a valuable consideration for the purpose of fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use, with or without permission, against the owner, tenant, or lessee of the land unless the injuries were caused by the gross negligence or willful and wanton misconduct of the owner, tenant, or lessee. [MCL 300.201(1); MSA 13.1485(1).]

The governmental immunity from tort liability act (GTLA), MCL 691.1407; MSA 3.996(107), was first enacted in 1964, and amended significantly in 1986. It states, in relevant part:

> Except as otherwise provided in this act, all governmental agencies shall be immune from tort liability in all cases wherein the governmental agency is engaged in the exercise or discharge of a governmental function. [MCL 691.1407(1); MSA 3.996(107)(1).]

Although the interplay between the RUA and the GTLA has been raised before, the issue whether governmental immunity bars a claim brought under the RUA against a governmental entity has never been decided. For example, in *Wymer v Holmes*, 429 Mich 66, 78, n 15; 412 NW2d 213 (1987), the Supreme Court noted that it has not addressed the question whether public land is covered by the RUA. In *Schiller v Muskegon State Park*, 153 Mich App 472, 474; 395 NW2d

75 (1986), the defendant moved for summary disposition on the basis of both the RUA and the GTLA. This Court held that because the RUA barred that suit, the Court did not need to address the question of governmental immunity. *Id.*, p 476. Similarly, the Court determined in *Matthews v Detroit*, 141 Mich App 712, 720; 367 NW2d 440 (1985), that it did not need to address the issue of governmental immunity. Finally, in *McNeal v Dep't of Natural Resources*, 140 Mich App 625, 630; 364 NW2d 768 (1985), the Court held that the plaintiff's claim was barred both by governmental immunity and the RUA for independent reasons. Here, because defendant township did not prevail on the RUA defense, we must address and resolve the governmental immunity issue.

Statutory interpretation is a question of law subject to review de novo on appeal. *St George Greek Orthodox Church v Laupmanis Associates, PC*, 204 Mich App 278, 282; 514 NW2d 516 (1994). A fundamental goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993). Where the language of a statute is of doubtful meaning, the Court must examine the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the Legislature's purpose. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994).

The GTLA does not indicate whether the Legislature intended to alter the RUA. However, the Legislature is presumed to be familiar with existing laws when promulgating new laws, and is presumed to have considered the effect of new laws on all existing laws.

*Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993). Where it is clear that a statute conflicts with an earlier enacted provision, the Legislature is deemed to have repealed the prior statute to the extent of the conflict. *Shirilla v Detroit*, 208 Mich App 434, 439; 528 NW2d 763 (1995).

Here, the GTLA was amended significantly in 1986. The RUA, first enacted in 1953, has only been slightly altered since that time. Because the GTLA does not make an exception for claims brought pursuant to the RUA, we presume that the Legislature considered the effect that the GTLA would have on the RUA, but elected not to except the RUA from its scope. *Id.* There is no dispute that defendant township is a governmental agency or that it was engaged in the exercise or discharge of a governmental function. In addition, there is no genuine issue of material fact that any exception to governmental immunity is applicable. Accordingly, the trial court erred in denying the township's motion for summary disposition on the basis of governmental immunity. MCL 691.1407(1); MSA 3.996(107); *Citizens Ins Co, supra,* p 486.

This case is distinguishable from *Malcolm v East Detroit*, 437 Mich 132; 468 NW2d 479 (1991). In that case, the now repealed emergency medical services act (EMSA), MCL 333.20701 *et seq.*; MSA 14.15(20701) *et seq.*, was held to modify the GTLA. *Id.*, p 148. However, the EMSA was enacted after the GTLA. *Id.*, p 139. Here, in contrast, the RUA was enacted before the GTLA. In addition, whereas the EMSA explicitly refers to governmental bodies, *id.*, pp 143-144, the RUA does not refer at all to governmental bodies or units.

In addition, our holding is consistent with the legislative purpose behind the RUA, which is "to encourage

owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." *Wymer, supra,* p 77. Our holding does not discourage any owners of land to make land and water areas available to the public for recreational purposes. To the contrary, by construing the GTLA broadly, see *Jamieson v Luce-Mackinac-Alger-Schoolcraft Dist Health Dep't,* 198 Mich App 103, 107-108; 497 NW2d 551 (1993), our holding further encourages governmental agencies to allow recreational use of public land.

Although plaintiffs argue that the GTLA is general while the RUA is specific, the RUA applies to all landowners of unimproved, rural land. The GTLA exempts only governmental landowners from the RUA's purview. Accordingly, our holding does not violate the rule of statutory construction that, when two statutes conflict, and one is specific to the subject matter while the other is only generally applicable, the specific statute prevails. *Schubert v Dep't of Treasury,* 212 Mich App 555, 559; 538 NW2d 447 (1995).

Our disposition of this issue makes it unnecessary to address defendant township's other allegations of error.

Reversed.